173 N.J. Super. 492 (1980)
414 A.2d 607
HENRY KALNAS, PLAINTIFF-APPELLANT,
v.
LAYNE OF NEW YORK COMPANY, INC., DEFENDANT AND THIRD-PARTY PLAINTIFF-RESPONDENT,
v.
EMCEE CONSTRUCTION COMPANY, INC., THIRD-PARTY DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted April 29, 1980.
Decided May 8, 1980.
*494 Before Judges LORA, ANTELL and PRESSLER.
Robert J. Forgash, attorney for appellant.
William M. Lake, attorney for defendant and third-party plaintiff-respondent.
Parker, McCay & Criscuolo, attorneys for the third-party defendant-respondent (Jeanne A. Taylor on the brief).
The opinion of the court was delivered by PRESSLER, J.A.D.
Plaintiff Henry Kalnas appeals from the involuntary dismissal of his third-party negligence action against defendant Layne of New York Company, Inc. (Layne) on Layne's motion made at the conclusion of plaintiff's case. The basis of the trial court's action was its conclusion that Layne was immune from a third-party action under the Workers' Compensation Act, N.J.S.A. 34:15-8. We affirm the dismissal, not for the reason relied on *495 by the trial judge but because we are persuaded that plaintiff failed to prove a prima facie case of liability against Layne.
We are, of course, obliged to view the facts adduced on plaintiff's case most favorably to him and to give him the benefit of all favorable inferences supported thereby. R. 4:37-2(b); Dolson v. Anastasia, 55 N.J. 2, 5-6 (1969). So viewed, the proofs showed that plaintiff was a laborer employed by a construction firm, Emcee Construction Company, Inc. (Emcee), which was interested in bidding on a water treatment plant project of the City of Bordentown (city). Apparently the city's plan was to take bids for three separate contracts for the total job, one for structural and mechanical work, one for plumbing, heating, ventilation and air conditioning, and one for electrical work. The last two of these contracts were entered into by the city with bidders not here involved. As to the first of these contracts, Emcee entered into a joint venture with defendant Layne for the purpose of submitting a bid, their agreement being that Emcee would do the structural work and Layne the mechanical work. Their bid was accepted and they entered into a written joint venture agreement essentially providing which contract item would be done by which company and allocating to each a share of the total contract price based on the actual work to be undertaken by each. The agreement further required each joint venturer to be "responsible for all of the general conditions as they appear to apply to each partner." There is nothing in the record to suggest that the joint venturers would combine their payrolls or would in any other way supervise, control or bear financial responsibility for the employees of the other.
Emcee, of all the contractors, was apparently first on the job, Layne's work at the site not having commenced until some eight months after Emcee's. Emcee's work apparently included site clearance, and early in the project, when it alone was on the site, it became necessary to remove a very large tree therefrom. A crew of Emcee's, including plaintiff, began to perform this task during the course of which plaintiff was seriously injured. It *496 appears that the factors contributing to the accident were improper safety equipment issued to plaintiff by his foreman, inadequate instruction as to the technique of performing the work, and plaintiff's inexperience in tree removal.
Plaintiff sought and received workers' compensation benefits from his employer, Emcee, and brought this third-party action against Layne who, in turn, impleaded Emcee, claiming a right to indemnification from it. Plaintiff's primary theory of Layne's liability, particularly as it became focused during the trial, was that Layne had an independent obligation to him to assure him a safe place to work and to ensure compliance by all personnel on the site with the relevant provisions of the Construction Safety Code, N.J.A.C. 12:180-1.1 et seq.
The trial judge on the motion for involuntary dismissal did not deal directly with the question of Layne's breach of duty in respect of plaintiff because he concluded that the fact of the joint venture relationship between Layne and plaintiff's employer, Emcee, cloaked Layne with the same mantle of immunity under the Workers' Compensation Act as Emcee itself was entitled to. This conclusion was based on his perception that the essential attributes of a joint venture are the same as those of a partnership. He noted that an employee of a partnership is barred by the exclusivity of the workers' compensation remedy from bringing a third-party action against either the partnership or any of its partners individually. See, e.g., Mazzuchelli v. Silberberg, 29 N.J. 15, 21-24 (1959); Seltzer v. Isaacson, 147 N.J. Super. 308 (App.Div. 1977). He therefore reasoned that because of the partnership nature of the joint venture, an employee of one of the joint venturers is also barred by the exclusivity of the workers' compensation remedy from bringing a third-party action against all joint venturers whether or not his direct employer.
There is apparently no authority in this State addressing the issue of the availability of a third-party action against a *497 joint venturer and we have substantial doubt that the partnership analogy is dispositive. In the typical partnership situation the partnership is, indeed, both formalistically and functionally, the employer. See, e.g., N.J.S.A. 34:15-36, expressly recognizing that "employer" within the intendment of the Workers' Compensation Act may include a natural person, a partnership or a corporation. But these are all entities subsumed by the basic concept of the employer as the master and, as that section of the act further provides, "`employer' is ... synonymous with master." In our view, therefore, whenever there is a dispute as to whether there is in fact an employment relationship encompassed by the act, and particularly where the circumstances of the relationship depart from traditional modes, the resolution of the question requires a factual analysis of all of the indicia of the relationship in order to determine if it is truly that of master-servant. And in order to constitute such a relationship, it must be characterized by such elements as the employer's supervisory power, his right to control the activities of the employee, his right to terminate the relationship, his payment to the employee of regular wages for services, and his provision of tools and equipment and facilities. See, generally, Marcus v. Eastern Agricultural Ass'n, Inc., 32 N.J. 460 (1960), rev'g on the dissent in 58 N.J. Super. 584, 596 (App.Div. 1959).
Thus, it is clear that while the joint venturers themselves are, inter se, essentially partners, that partnership characterization does not necessarily and for all purposes determine either the relationship of each of the joint venturers to the employees of the others nor of the joint venture as an entity to the joint venturers' employees. Whether each joint venturer can be deemed the employer of all the employees engaged in the work of the joint enterprise must clearly depend on the particular facts and circumstances surrounding the joint venture. This is especially so where, as here, each joint venturer comes to the joint venture with his own work force. Among the critical *498 questions under these circumstances are whether or not there was an intention to share or combine the separate work forces, whether the separate work forces have been in fact functionally shared or combined, whose instructions vis-a-vis the joint venturers bind each of the work forces, who pays them and who ultimately controls them. Clearly, depending on how the joint venturers have agreed to perform the joint enterprise and have actually performed it, their respective employees may remain their own or may for purposes of the joint enterprise become each others as well and therefore also become the employees of the joint venture as a separate entity.
The indicia here adduced are suggestive of the conclusion that the work force of each joint venturer remained its own. Despite the absence of a finding, we assume arguendo that Layne was not plaintiff's employer. Under this assumption, the question is whether there was such a prima facie showing on plaintiff's case of Layne's negligence as would make Layne chargeable for his injury. It is our negative answer to this question which impels our affirmance of the dismissal here and moots resolution of the employment relationship question.
Plaintiff argues that his injury resulted from violations of the Construction Safety Code, supra, in respect of his safety equipment. We are willing to assume that is so. The only basis which plaintiff assigns as implicating Layne in that violation is N.J.A.C. 12:180-3.15, which provides in full as follows:
3.15.1 Where one contractor is selected to execute the work of the project, he shall assure compliance with the requirements of this Chapter from his employees as well as all subcontractors.
3.15.2 Where the owner selects more than one contractor to perform the work of the project, he shall be responsible or he shall designate one particular contractor to be responsible for providing the general safeguarding as well as gaining compliance with the requirements of this Chapter from all other contractors and parties engaged in the operation of the project.
*499 See, also, Bortz v. Rammel, 151 N.J. Super. 312 (App.Div. 1977), certif. den. 75 N.J. 539 (1977). The problem, however, is that neither of these provisions applies to Layne. The first subsection does not since there were at least three contractors for the project, that is, the electrical contractor and the plumbing contractor as well as the Layne-Emcee joint venture. The second does not apply to Layne since there was no suggestion that the owner of the project, the city, had designated any one contractor to be in charge of the overall safety responsibility. Plaintiff further suggests an independent responsibility in Layne for his safety by pointing to the above-quoted provision of the joint venture agreement imposing on each joint venturer the responsibility for all of the general conditions applicable to either. We regard the term "general conditions" as meaning the conditions stated in the contract documents and not, as plaintiff assumes, the physical conditions of the work itself. We regard our interpretation of the phrase as clearly mandated in the context of the joint venture agreement, and there is nothing in the record to suggest that there was any contract condition violated by Layne which contributed to the accident.
In view of the fact that Layne had not even yet commenced work at the job site when plaintiff was injured and does not appear to bear any direct independent responsibility for plaintiff or for his injury, all that remains by way of a liability theory is plaintiff's contention that Layne, as Emcee's "partner," is vicariously liable for Emcee's negligence and hence vicariously liable for Emcee's failure to have provided him with a safe place in which to work, proper equipment and proper instructions.
We are satisfied, however, that under these circumstances vicarious liability for the employer's negligence alone does not afford an adequate basis for third-party liability. The Workers' Compensation Act provides the exclusive remedy for an employer's act of negligence and we find it consistent with the policy of the act that its remedy be exclusive in respect of *500 that same act of negligence even if one not technically an employer is vicariously liable for it as well. In our view, if a unitary and single act of negligence is in actuality committed only by the employer, a nonemployer who is vicariously liable only and only because he is the employer's partner, ought for purposes of the Workers' Compensation Act, be regarded "in substance, whether or not technically" as part of "a unitary employer-entity." See Freppon v. Hittner, 91 N.J. Super. 9, 12 (App.Div. 1966). We hold, therefore, that in the absence of an independent contributing act of negligence by the nonemployer joint venturer, the third-party action against him is not maintainable.
Affirmed.